*597 OPINION.
Smith:
Tlie first question to be decided in this appeal is whether tlie petitioner made any profit or sustained any loss in the year 1920 upon tlie sale of the capital stock of its subsidiary company. The facts are not in dispute. The petitioner during the year 1916 incorporated its branch store and took over the entire capital stock at $45,000 par value, in exchange for assets of a book value of $51,549.54. In the year 1920 it sold the capital stock of the subsidiary company, together with all of its assets, including earned surplus of a book *598 value of $35,003.69, for $60,000. Upon this transaction the petitioner claims that it sustained a loss of $13,454.35, while the respondent contends that the petitioner made a profit of $15,000. The petitioner claims its loss, not as a loss upon the sale of the capital stock of the subsidiary company, but as an operating loss, it being contended that the transaction was in fact a sale of assets of the parent company; that, since for income and profits tax purposes the separate companies must be treated as a single economic unit, the corporate entity of the subsidiary company from the day of incorporation may be entirely disregarded.
We have held in Farmers Deposit National Bank, 5 B. T. A. 520, that a sale by one member of an affiliated group of shares of capital stock owned by it in another member of the group is a sale by the affiliated group of its own capital stock and that such sale constitutes a capital transaction which does not result in either a taxable gain or a deductible loss. See also United Drug Co. v. Nichols, 21 Fed. (2d) 160.
We have also held in H. S. Crocker Co., 5 B. T. A. 537, that where a corporation acquires the capital stock of its subsidiary at its book value and subsequently sells it at its book value no profit or loss to the affiliated group results. The present case is not distinguishable from these cases in any material respect. In the appeals referred to, we have relied solely upon the authority of the statute in adhering to the so-called single economic unit theory. The doctrine was not intended to have any broader application than there given. Certainly, there is no authority in the statutes or in these appeals for saying that a corporation which was validly incorporated and which continued to do business in a corporate capacity over a period of years never had any corporate existence. The facts are that the subsidiary company herein did exist as a distinct entity and that the petitioner purchased and sold its capital stock. The transaction was none the less a sale of capital stock because of the fact that all of the capital stock rather than a part was the matter of the purchase and sale, and that the sale terminated the affiliation. The sale did not terminate nor in any way affect the existence of the subsidiary company as an entity. The petitioner might have at any time dissolved the subsidiary company and sold its assets as such if it had chosen to do so. What the petitioner actually owned at the time of the sale and what it sold was not the assets, but the capital stock of its subsidiary and such a sale we have held can not result in either a profit or a loss.
On February 28, 1920, the affiliation ceased and each of the companies existed thereafter for income-tax purposes as a separate and *599 distinct corporation. The invested capital of each company from that date must, therefore, be computed upon the basis of separate returns for the remaining ten months of the year 1920. American La Dentelle, Inc., 1 B. T. A. 575. Since the sale of the capital stock was a capital transaction the proceeds of the sale should be included in the petitioner’s invested capital for the remainder of that year. Farmers Deposit National Bank, supra. The petitioner’s invested capital was, therefore, the invested capital of the affiliated group, less the par value of the capital stock of its subsidiary, less the surplus of the subsidiary, plus the proceeds of the sale of the capital stock of the subsidiary.
The respondent has properly eliminated from the petitioner’s invested capital the unpaid balance of tKe purchase price of stock subscribed for by its employees under the agreement set forth in the findings of fact. We have held in Meadows & Co., 5 B. T. A. 241, that the value of a stock subscription agreement may not be included in invested capital. The petitioner in that appeal, as in the present one, relied upon Hewitt Rubber Co., 1 B. T. A. 424, where the value of a promissory note paid in for stock at par value was allowed as invested capital. The difference between promissory notes and agreements of this nature clearly warrants a distinction. It is not a question of whether the subscribers were bound under the agreements as between themselves and the petitioner, but rather a question of the character and the value of the agreement to the petitioner as a capital asset. No definite value has been shown. An officer of the petitioner’s bank testified that the bank would have made a loan to the petitioner upon these agreements to the- extent of the bank’s authorization for such loans, but only upon the endorsement and credit of the petitioner. We are not satisfied from the evidence that the stock subscription agreements themselves had a cash value or that they constituted property paid in for shares for invested capital purposes. Central Consumers Wine & Liquor Co., 1 B. T. A. 1190.
The interest payments received by the petitioner under the agreements were, we believe, properly included in taxable income. They were not received as payments or credits for shares of capital stock and they were immediately available for general uses along with the petitioner’s income from other sources.
Beviewed by the Board.

Judgment will be entered on W days’ notice, wnder Rule SO.

GeebN dissents.